# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **MURIEL VANESSA BROWN, DONDREA BROWN, ROSALIND DUNNING, Individually and On Behalf of All Others Similarly Situated,** | **Case No. 2:22-cv-00105** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **FAMILY DOLLAR, INC. and DOLLAR TREE STORES, INC.,** | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT

1.      Plaintiffs, Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning individually and on behalf of all others similarly situated ("Plaintiffs"), by and through their undersigned attorneys, bring this Class Action Complaint against Defendants Family Dollar, Inc. and Dollar Tree Stores, Inc. (together, "Defendants"), for their negligent, reckless, and/or intentional practice of selling products that may be contaminated by virtue of a rodent infestation and other unsanitary conditions in stores throughout Alabama, Louisiana, Mississippi, Arkansas, Tennessee, and Missouri (together, the "States").  Defendant Family Dollar, Inc. is a wholly owned subsidiary of Defendant Dollar Tree Stores, Inc.  Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Classes (as defined herein), including requiring full and accurate disclosure of the rodent infestation and other unsanitary conditions and restoring monies to the members of the proposed Classes.  Plaintiffs allege the following based upon personal knowledge, investigation by counsel, and facts that are a matter of public record and, as to all other matters, upon information and belief.

## I.      INTRODUCTION

2.      Family Dollar is a value store chain that aspires to be "[t]he best small-format value and convenience retailer, serving the needs of [its] shoppers in the neighborhoods [it] serves."[1]

3.      Defendants sell groceries and household goods at discounted prices in stores throughout the United States including over-the-counter medications, medical devices, dietary supplements, cosmetics, human food, and pet food (the "Products").

4.      On or about February 18, 2022, Family Dollar temporarily closed 404 of its stores in Alabama, Tennessee, Louisiana, Mississippi, Arkansas, and Missouri after the U.S. Food and

---

[1] https://www.familydollar.com/about-us (last visited 2/22/2022)

Drug Administration (FDA) announced that it had inspected, and found unsanitary conditions, including a rodent infestation, inside Family Dollar Distribution Center 202 ("Distribution Facility") in West Memphis, Arkansas (the "Rodent Infestation").[2]

5.      On February 18, 2022, the FDA issued an "FDA Alert" concerning the Rodent Infestation and provided initial safety recommendations and warnings.[3]

6.      On February 18, 2022, Family Dollar announced it would initiate a voluntary retail level product recall of some FDA-regulated products that were affected by the Rodent Infestation.

7.      Defendants have been operating the Distribution Facility since 1994 which is depicted here:[4]



8.      Between January 11, 2022 and February 11, 2022, five FDA investigators inspected

---

[2] https://www.businesswire.com/news/home/20220218005563/en/Family-Dollar-Stores-Issues-Voluntary-Recall-of-Certain-FDA-Regulated-Products-in-Six-States-Including-Drugs-Devices-Cosmetics-Foods (last visited 2/22/2022)
[3] FDA Alerts the Public to Potentially Contaminated Products from Family Dollar Stores in Six States | FDA (last visited 3/3/2022)
[4] Family Dollar Distribution Center at West Memphis, AR (last visited 3/3/2022)

the Distribution Facility approximately 15 times. An official FDA inspection report concerning its findings was finalized on February 11, 2022 (FDA 483 Inspection Report No. 3004286071) (the "FDA Report").[5]

9.     The Rodent Infestation—that was never disclosed to Family Dollar consumers prior to the FDA and Family Dollar's announcements—poses a health and safety hazard to consumers.

10.     There are numerous dangers associated with rodents including the potential presence of Salmonella, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems.

11.     Defendants have had actual knowledge of the Rodent Infestation since at least March 29, 2021.  They knew or should have known of the Rodent Infestation from far earlier due to their obligation to inspect their facilities, including distribution facilities and/or centers, for safety and health-related issues. Nevertheless, Defendants chose to omit information about the Rodent Infestation and not to disclose Rodent Infestation to Plaintiffs and the Classes, so that it could continue to profit from the sale of the Products.

12.     According to the New York Times:

A recent Food and Drug Administration inspection of the facility, in West Memphis, Ark., found live and dead rodents "in various states of decay," rodent droppings, evidence of gnawing and nesting, and products stored in conditions that did not protect against these unsanitary conditions, the agency said in a statement on Friday.

A fumigation of the facility last month revealed more than 1,100 dead rodents, **and a review of company records indicated the collection of more than 2,300 rodents from late March to September, "demonstrating a history of infestation**," the agency said.[6]

---

[5] *Available at*, https://www.fda.gov/media/156334/download (last visited 3/2/2022).
[6] https://www.nytimes.com/2022/02/19/us/fda-family-dollar-recall.html (last visited 2/22/2022) (emphasis added)

13.     According to the FDA Report, rodent urine (and odor), nesting materials, rodent carcasses, and excreta was found on or near pallets or food at the Distribution Facility.

14.     In a FORM 8K submitted to the Securities and Exchange Commission (SEC), dated March 2, 2022, Defendant Dollar Tree Inc. admitted "The circumstances leading to the Recall (and/or the Recall itself) has had and may have other negative impacts, which could include reputational damage, lost sales, further or additional governmental investigations and/or enforcement actions, private litigation (see below) and/or further diversion of management attention, which could have a material adverse effect, individually or collectively, on the Company's business, results of operations and/or financial condition."[7]

15.     According to WMUR9 News, New Hampshire, "The distribution center in West Memphis was not the only Family Dollar to have rodent infestations in recent years. Family Dollar stores in Las Vegas, Sacramento, Richmond, Miami Gardens, Pittsburgh, Canton, New York and other areas had to close down over the past few years because of rodent infestations … Some experts say these issues point to a larger pattern of neglect at Dollar Tree, Family Dollar's parent company, which acquired the chain in 2015 and has a long record of worker safety violations."[8]

16.     Despite its knowledge, Defendants omitted information regarding the Rodent Infestation from all advertising, promotion, or other contacts with Plaintiffs and members of the Classes prior to their purchase of the Products and continued to ship the products to its stores from the warehouse. By knowingly failing to disclose the Rodent Infestation and associated risk of contamination to consumers and by failing to correct the problem, Plaintiffs and the Classes purchased Products of a lesser standard, grade and quality represented that do not meet ordinary

---

[7] Inline XBRL Viewer (sec.gov) (last visited 3/3/2022).
[8] 400 Family Dollar stores closed after a rat infestation. It's part of a troubling pattern (wmur.com) (last visited 3/7/2022)

and reasonable consumer expectations regarding the quality or value of the Products and are unfit for their intended purpose. Moreover, the contamination associated with the Rodent Infestation poses a health risk to consumers that used or handled the Products.

17.     Plaintiffs bring this action on behalf of themselves and all those similarly situated (the "Classes," "Class Members,") for Defendants' deceptive trade practices in violation of the consumer protection laws of the States.  Plaintiffs seek damages, attorney fees and costs, punitive damages, and the replacement of, or refund of money paid to purchase the Products, and any other legal relief available for their claims. Should Plaintiffs demanded legal relief be unavailable or prove insufficient, Plaintiffs seeks appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.   **PARTIES**

18.     Named Plaintiffs Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning, and at all times relevant hereto have been, citizens of Sweetwater, Alabama, in Marengo County. Plaintiffs Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning purchased medicines and food items, from January,2017 through February,2022 from a Family Dollar located in Linden, Alabama.

19.     During the time Plaintiffs Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning purchased and used the Products, and due to the false and misleading claims and omissions by Defendants, Plaintiffs believed the products he purchased were safe.  Plaintiffs were unaware the Products contained, or had a risk of containing, Salmonella or other infectious diseases. Plaintiff s would not have purchased the Products if the Rodent Infestation and the related potential for contamination with Salmonella or other infectious disease had been fully and accurately disclosed and represented to them.

20.     Defendant Family Dollar, Inc. is incorporated under the laws of the state of North Carolina with its principal place of business located at 500 Volve Pkwy, Chesapeake, Virginia.

21.     Defendant Dollar Tree Stores, Inc, is a Virginia corporation with its principal place of business at the same location as Family Dollar.

22.     Defendant Family Dollar is a wholly owned subsidiary of Defendant Dollar Tree.

23.     Defendants are responsible for the manufacturing, marketing, distribution, sale, and labeling of the Products to millions of consumers throughout the States, including in this District. Defendants created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

24.     The marketing and advertising relied on by Plaintiffs Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning and the Classes was disseminated throughout the States, including this District, by Defendants and their agents through advertising, packaging, and labeling that contained the omissions alleged herein.  The marketing and advertising were designed to encourage consumers, and reasonably misled consumers, into purchasing the Products throughout the States, including this District.

### III.     JURISDICTION AND VENUE

25.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d) for the following reasons: (a) some of the class members are citizens of a state that is different from the citizenship of the Defendants; (b) the putative class size is greater than 100 persons; (c) the amount in controversy in the aggregate for the putative class exceeds the sum of $5 million, exclusive of interest and costs; and (d) the primary defendants do not include States, State officials, and/or other governmental entities against whom the district court may be foreclosed from ordering relief.

26.     This Court has original jurisdiction over this action under CAFA, 28 U.S.C. §1332(d), because, upon information and belief, no other class action has been filed asserting the same or similar factual allegations against the defendants on behalf of the same or other persons during the 3-year period preceding the filing of this class action.

**General Personal Jurisdiction**

27.     This Court has personal jurisdiction over Named Plaintiffs Muriel Vanessa Brown, Dondrea Brown, Rosalind Dunning who are residents of the State of Alabama.

28.     This Court has both general and specific personal jurisdiction over the Defendants.

29.     This Court has general personal jurisdiction over Defendants because Defendants operate in Alabama and because Defendants advertise, market, and sell the Products in Alabama, accepts money from purchasers located in Alabama, has engaged in systematic and continuous business activities in Alabama, transacted substantial business with Alabama entities and residents, and generally has sufficient minimum contacts in Alabama to satisfy the Alabama Long Arm Statute.

**Specific Personal Jurisdiction**

30.     This Court has specific personal jurisdiction over Defendants arising from Defendants' advertising, marketing, and sale of the Products in Alabama, which at all relevant times, included or risked including dangerous substances, all of which have caused harm in Alabama, as a result of the specific business activities complained of herein, either directly or through Defendants' agents.

31.     This Court has specific personal jurisdiction over Defendants because the advertising, marketing, and sale of the Products, which included or risked including dangerous substances, occurred in parts of Alabama that are located in this District.

32.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), because Plaintiffs reside in this District and ingested and handled the Products at issue within the confines of this District.

33.     Venue is proper in this District under 28 U.S.C. §1391(b)(1) & (2) and 28 USC §1391(d) because Defendants regularly conduct substantial business within this District

34.     Venue is also proper in this District under 28 U.S.C. §1391(b)(2) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this District, namely Defendants' advertisement, sale, and marketing of the Products, which occurred in this District and caused financial harm to members of the putative class that reside in this District.

## IV.    FACTUAL BACKGROUND

35.     On February 18, 2022, the U.S. Food and Drug Administration issued the following press release based on its February 11, 2022 Report:

> Today, the U.S. Food and Drug Administration is alerting the public that several categories of FDA-regulated products purchased from Jan. 1, 2021, through the present from Family Dollar stores in Alabama, Arkansas, Louisiana, Mississippi, Missouri and Tennessee may be unsafe for consumers to use. The impacted products originated from the company's distribution facility in West Memphis, Arkansas, where an FDA inspection found insanitary conditions, including a rodent infestation, that could cause many of the products to become contaminated. The FDA is working with the company to initiate a voluntary recall of the affected products.
>
> "Families rely on stores like Family Dollar for products such as food and medicine. They deserve products that are safe," said Associate Commissioner for Regulatory Affairs Judith McMeekin, Pharm.D. "No one should be subjected to products stored in the kind of unacceptable conditions that we found in this Family Dollar distribution facility. These conditions appear to be violations of federal law that could put families' health at risk. We will continue to work to protect consumers."
>
> This alert covers FDA-regulated products purchased from Family Dollar stores in those six states from Jan. 1, 2021, through the present. Some

examples of these products include human foods (including dietary supplements (vitamin, herbal and mineral supplements)), cosmetics (skincare products, baby oils, lipsticks, shampoos, baby wipes), animal foods (kibble, pet treats, wild bird seed), medical devices (feminine hygiene products, surgical masks, contact lens cleaning solutions, bandages, nasal care products) and over-the-counter (OTC) medications (pain medications, eye drops, dental products, antacids, other medications for both adults and children).

Consumers are advised not to use and to contact the company regarding impacted products. The agency is also advising that all drugs, medical devices, cosmetics and dietary supplements, regardless of packaging, be discarded. Food in non-permeable packaging (such as undamaged glass or all-metal cans) may be suitable for use if thoroughly cleaned and sanitized. Consumers should wash their hands immediately after handling any products from the affected Family Dollar stores.

Consumers who recently purchased affected products should contact a health care professional immediately if they have health concerns after using or handling impacted products. Rodent contamination may cause Salmonella and infectious diseases, which may pose the greatest risk to infants, children, pregnant women, the elderly and immunocompromised people.

Following a consumer complaint, the FDA began an investigation of the Family Dollar distribution facility in West Memphis, Arkansas, in January 2022. Family Dollar ceased distribution of products within days of the FDA inspection team's arrival on-site and the inspection concluded on Feb. 11. Conditions observed during the inspection included live rodents, dead rodents in various states of decay, rodent feces and urine, evidence of gnawing, nesting and rodent odors throughout the facility, dead birds and bird droppings, and products stored in conditions that did not protect against contamination. More than 1,100 dead rodents were recovered from the facility following a fumigation at the facility in January 2022. Additionally, a review of the company's internal records also indicated the collection of more than 2,300 rodents between Mar. 29 and Sep. 17, 2021, demonstrating a history of infestation.[9]

36.     On the same day, Family Dollar issued a press release indicating it was initiating a

voluntary retail level product recall of "certain products regulated by the [FDA] that were stored

and shipped to 404 stores from Family Dollar Distribution Center 202 in West Memphis, Arkansas

---

[9] https://www.fda.gov/news-events/press-announcements/fda-alerts-public-potentially-contaminated-products-family-dollar-stores-six-states (last accessed 2/22/2022)

from January 1, 2021, through the present due to the presence of rodents and rodent activity at Family Dollar Distribution Center 202."[10]

37.     Family Dollar acknowledges the health and safety concerns arising from the Rodent Infestation:[11]

> There are numerous hazards associated with rodents including the potential presence of *Salmonella*. Use or consumption of affected products may present risk of illness due to the potential presence of *Salmonella*, an organism which can cause serious and sometimes fatal infections in infants, young children, frail or elderly people, pregnant persons, persons with pre-existent pathology (e.g., patients with cancer undergoing chemotherapy treatments, organ transplant recipient, etc.) and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (*i.e.*, infected aneurysms), endocarditis and arthritis.

38.     Defendants' voluntary recall is limited in scope to certain FDA-regulated products:[12]

> Products covered by this retail level recall include all: (i) drugs; (ii) medical devices; (iii) cosmetics; (iv) dietary supplements; and (v) human and animal (pet) food products. The recall does not apply to products shipped directly to the stores by the distributor or manufacturer, such as all frozen and refrigerated items. The 404 stores to which this recall applies are listed on the attached schedule. The recall does not apply to other store locations.

39.     Defendants' recall is further defective and contradicts the FDA Alert because while the FDA Alert advises that certain products should be discarded, the recall asks customers to return the same products to stores (which are no longer open anymore as a result of the Rodent Infestation).

---

[10] https://www.businesswire.com/news/home/20220218005563/en/Family-Dollar-Stores-Issues-Voluntary-Recall-of-Certain-FDA-Regulated-Products-in-Six-States-Including-Drugs-Devices-Cosmetics-Foods (last visited 2/22/2022)
[11] *Id.*
[12] *Id.*

## V.   FRAUDULENT OMISSION ALLEGATIONS

40.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Family Dollar and Dollar Tree responsible for disseminating unfair, deceptive, and misleading marketing materials regarding the Products.  Defendants are necessarily in possession of all this information. Plaintiffs' claims arise out of Defendants' fraudulent omission of the Rodent Infestation.

41.    Plaintiffs allege that at all relevant times, including specifically at the time of purchased the Products, Defendants knew, should have known, or were reckless in not knowing of the Rodent Infestation; Defendants had a duty disclose information material to a consumer, such as the Rodent Infestation, based upon its exclusive knowledge; but Defendants never disclosed the Rodent Infestation to Plaintiffs, Class Members, or the general public other than its halfhearted, inadequate recall of some Products.

42.    Plaintiffs make the following allegations as specific as reasonably possible:

    a.    **Who:** Defendants actively omitted information concerning the existence of the Rodent Infestation from Plaintiffs and Class Members at the point of sale or thereafter.  Defendants' agents should have and could have disclosed the Rodent Infestation.  As to Plaintiffs themselves, Defendants should have and could have disclosed the Rodent Infestation at the time they purchased the Products or thereafter.

    b.    **What:** Defendants knew, should have known, or were reckless in not knowing, that the Products were exposed to Salmonella and other infectious diseases due to the Rodent Infestation.  Despite their knowledge,

Defendants *failed to disclose the Rodent Infestation* at the point of sale or thereafter.

c.   **When:** Defendants' omissions began *from the start of the Class period and continue to this day*. Defendants have never taken any action to inform Plaintiffs, Class Members, or the general public of the true nature of the Rodent Infestation. As to Plaintiffs themselves, Defendants have continually omitted the true nature of the Rodent Infestation for the entirety of the relevant time period, including at the point of sale.

d.   **Where:** Defendants' omissions occurred *in every communication* it had with Plaintiffs, Class Members, and the general public. As to Plaintiffs themselves, Defendants' omissions occurred in every communication it had with Plaintiffs about the Products, including all communications that happened before, at the point of and after their purchases of the Products.

e.   **How:** Defendants *omitted and failed to disclose* the Rodent Infestation to Plaintiffs, Class Members, or the general public at the point of sale or thereafter via a press release, permanent warnings affixed to the Products, direct mail campaign, or otherwise.  As to Plaintiffs themselves, Defendants omitted and failed to disclose the Rodent Infestation in any communication or point of sale document.

f.   **Why:** Due to corporate greed, Defendants omitted the Rodent Infestation to deceive Plaintiffs, Class Members, and the general public into buying Products to *maximize its profits*.  Furthering its goal to maximize profits, Defendants failed to notify Class Members of the true nature of the Rodent

Infestation to avoid an avalanche of requests to refund Product purchases. As to Plaintiffs themselves, Defendants omitted the Rodent Infestation to deceive them into purchasing the Products, thereby maximizing Defendants' profits and to avoid refunding the cost of the Products.

g.    **Causation:** Because Family Dollar failed to disclose the Rodent Infestation, despite its extensive knowledge, Plaintiffs and Class Members purchased Products that did not or will not safely perform and as such are worth less than one that does safely perform. Had Defendants disclosed the Rodent Infestation, *Plaintiffs and other Class Members would not have purchased the Products, or certainly would have paid less for the Products*.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

43.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Classes the true character, quality, and nature of the Products, that the Products were exposed to contamination by virtue of the Rodent Infestation, and that the Rodent Infestation poses a health and safety concern to consumers and diminishes the value of the Products.

44.    As a result of this active concealment by Defendants, all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

### A.    DISCOVERY RULE TOLLING

45.    Class Members had no way of knowing about the Rodent Infestation and the other information concealed by Defendants.

46.    Within the time period of any applicable statutes of limitation, Plaintiffs and the Class Members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Rodent Infestation.

47.     Plaintiffs and the Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendants did not report information within its knowledge to federal authorities (including the FDA), their stores or consumers, nor would a reasonable and diligent investigation have disclosed that Defendants had information in its possession about the existence and dangerousness of the Rodent Infestation and opted to conceal that information until shortly before this action was filed.

48.     All applicable statutes of limitation have been tolled by operation of the discovery rule.

**B.     FRAUDULENT CONCEALMENT TOLLING**

49.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

50.     By failing to disclose the Rodent Infestation of which it was aware, Defendants disregarded the safety of consumers who purchased the Products.

**C.     ESTOPPEL**

51.     Defendants were under a continuous duty to disclose to Plaintiffs and the Class Members the true character, quality, and nature of the Rodent Infestation and the contamination risks it posed to Products.

52.     Defendants knowingly, affirmatively, and actively concealed the Rodent Infestation and, thereby, the true nature, quality, and character of the Products from consumers, as well as the fact that the Rodent Infestation systematically devalued the Products and undermined consumer safety.

53.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.  <u>CLASS ACTION ALLEGATION</u>

54.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following classes:

<u>Alabama Class</u>
All persons residing in the state of Alabama who, during the maximum period of time permitted by law, purchased Products from Defendants.

<u>Tennessee Class</u>
All persons residing in the state of Tennessee who, during the maximum period of time permitted by law, purchased Products from Defendants.

<u>Louisiana Class</u>
All persons residing in the state of Louisiana who, during the maximum period of time permitted by law, purchased Products from Defendants.

<u>Mississippi Class</u>
All persons residing in the state of Mississippi who, during the maximum period of time permitted by law, purchased Products from Defendants.

<u>Missouri Class</u>
All persons residing in the state of Missouri who, during the maximum period of time permitted by law, purchased Products from Defendants.

<u>Arkansas Class</u>
All persons residing in the state of Arkansas who, during the maximum period of time permitted by law, purchased Products from Defendants.

(Collectively referred to herein as the "Classes").

55.     Excluded from the Classes are Defendants, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendants, Class Counsel and their employees, and the judicial officers and their immediate family members and associates court staff assigned to this case.

56.     <u>Numerosity—Fed. R. Civ. P. 23(a)(1)</u>.  The Classes are comprised of thousands of

individuals who were Defendants' customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendants' records.

57.   <u>Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  The questions of law and fact common to the Classes predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

(a)   whether Defendants owed a duty of care;

(b)   whether Defendants knew or should have known that the Rodent Infestation existed;

(c)   whether Defendants knew or should have known that the Rodent Infestation posed health and safety risks to consumers;

(d)   whether Defendants failed to disclose the Rodent Infestation;

(e)   whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(f)   whether those representations are likely to deceive a reasonable consumer;

(g)   whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(h)   whether Defendants continue to disseminate those representations despite knowledge that the representations were false, deceptive, and misleading;

(i)   whether Defendants' omissions or otherwise failing to disclose the Rodent Infestation is material to a reasonable consumer;

(j)     whether Defendants' marketing and advertising of the Products are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(k)     whether Defendants violated State consumer protection laws;

(l)     whether Defendants' decision to not withdraw food products not under the jurisdiction of FDA was false, misleading, or is otherwise actionable;

(m)     whether Defendants established and enforced proper hazard analysis critical control points ("HACCP"), good manufacturing practices ("GMP"), quality assurance, and/or quality control practices sufficient to identify and prevent pest and rodent infestations;

(n)     whether Defendants followed industry custom and practice to prevent pest and rodent infestations; and

(o)     whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief.

58.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

59.     <u>Typicality—Fed. R. Civ. P. 23(a)(3)</u>. Plaintiffs' claims are typical of those of the members of the Classes in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

60.     <u>Adequacy—Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Classes, have no interest incompatible with the interests

18

of the Classes, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

61.     <u>Predominance —Fed. R. Civ. P. 23(b)(3)</u>. Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

62.     <u>Superiority—Fed. R. Civ. P. 23(b)(3)</u>.  A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiffs and members of the Classes have suffered irreparable harm as a result of Defendants' bad faith, fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class Members' claims, no Class Member could afford to seek legal redress for the wrongs identified in this Complaint.   Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds of its violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

63.     Plaintiffs and the Classes do not anticipate any difficulty in the management of this litigation.

## VIII.   <u>CAUSES OF ACTION</u>

**COUNT I**
**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW**
**(LA. REV. STAT. § 51:1401, et seq.)**
**(brought on behalf of the Louisiana Class)**

64.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

65.     This claim is brought on behalf of Louisiana residents.

66.     Defendants and Plaintiffs are "persons" within the meaning of the LA. REV. STAT. § 51:1402(8).

67.     Plaintiffs are "consumer[s]" within the meaning of LA. REV. STAT. § 51:1402(1).

68.     The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." LA. REV. STAT. § 51:1405(A).

69.     By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendants engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

70.     Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

71.     By failing to disclose and by actively concealing the defects in the Products, Defendants engaged in unfair and deceptive business practices.

72.     In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

73.     Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

74.     Defendants intentionally and knowingly misrepresented material facts regarding the Products.

75.     Defendants knew or should have known that its conduct violated the Louisiana CPL.

76.     Defendants owed a duty to disclose the true safety and reliability of the Products.

77.     Because Defendants fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

78.     Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

79.     As a direct and proximate result of Defendants' violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiffs and the Class incurred damages.

80.     Pursuant to LA. REV. STAT. § 51:1409, Plaintiffs seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under LA. REV. STAT. § 51:1409.

## COUNT II
## VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE. ANN. § 75-24-1, et seq.)
### (brought on behalf of the Mississippi Class)

81.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

82.     This claim is brought on behalf of Mississippi residents.

83.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised."

84.     By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendants engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

85.     Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of

any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

86.    By failing to disclose and by actively concealing the defects in the Products, Defendants engaged in unfair and deceptive business practices.

87.    In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

88.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

89.    Defendants intentionally and knowingly misrepresented material facts regarding the Products.

90.    Defendants knew or should have known that its conduct was violative.

91.    Defendants owed a duty to disclose the true safety and reliability of the Products.

92.    Because Defendants fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

93.    Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

94.    As a direct and proximate result of Defendants' violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiffs and the Class incurred damages.

95.    Plaintiffs seek actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT III
## VIOLATION OF THE DECEPTIVE TRADE PRACTICE ACT
### (ARK. CODE ANN. § 4-88-101, et seq.)
### (brought on behalf of the Arkansas Class)

96.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

97.     This claim is brought on behalf of Arkansas residents.

98.     Defendants and Plaintiffs are "persons" within the meaning of the Arkansas

Deceptive Trade Practices Act ("Arkansas DTPA"), ARK. CODE ANN. § 4-88-102(5).

99.     The Products are "goods" within the meaning of ARK. CODE ANN. § 4-88-102(4).

100.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices,"

which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other

unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" ARK. CODE

ANN. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in

connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any

person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission

of any material fact with intent that others rely upon the concealment, suppression, or omission."

ARK. CODE ANN. § 4-88-108.

101.    By concealing the risks and harms associated with the use and handling of the

Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a

risk of containing Salmonella or other infectious diseases), Defendants engaged in deceptive

business practices, including representing that Products have characteristics, uses, benefits, and

qualities which they do not have; representing that Products are of a particular standard, quality,

and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive

acts or practices in the conduct of trade or commerce. All of this deception would be material to a

reasonable consumer.

102.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

103.    By failing to disclose and by actively concealing the defects in the Products, Defendants engaged in unfair and deceptive business practices.

104.    In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

105.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

106.    Defendants intentionally and knowingly misrepresented material facts regarding the Products.

107.    Defendants knew or should have known that its conduct was violative.

108.    Defendants owed a duty to disclose the true safety and reliability of the Products.

109.    Because Defendants fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of their bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

110.    Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

111.    As a direct and proximate result of Defendants' violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiffs and the Class incurred damages.

112.   As a result of Defendants' actions, Plaintiffs seek monetary relief against Defendants.

## COUNT IV
## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (MO. REV. STAT. § 407.010, et seq.)
### (brought on behalf of the Missouri Class)

113.   Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

114.   This claim is brought on behalf of Missouri residents.

115.   Defendants and Plaintiffs are "persons" within the meaning of MO. REV. STAT. § 407.010(5).

116.   Defendants engaged in "trade" or "commerce" in the State of Missouri within the meaning of MO. REV. STAT. § 407.010(7).

117.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." MO. REV. STAT. § 407.020.

118.   By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendants engaged in deceptive business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce. All of this deception would be material to a reasonable consumer.

119.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Products.

120.    By failing to disclose and by actively concealing the defects in the Products, Defendants engaged in unfair and deceptive business practices.

121.    In the course of Defendants' business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Products.

122.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs.

123.    Defendants intentionally and knowingly misrepresented material facts regarding the Products.

124.    Defendants knew or should have known that its conduct was violative.

125.    Defendants owed a duty to disclose the true safety and reliability of the Products.

126.    Because Defendants fraudulently concealed the harms and risks associated with the Products, consumers were deprived of the benefit of its bargain since the Products purchased were worth less than they would have been if they were free from such harms and risks.

127.    Plaintiffs suffered ascertainable loss caused by Defendants' misrepresentations and its concealment.

128.    As a direct and proximate result of Defendants' violations, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above. As a direct result of Defendants' misconduct, Plaintiffs and the Class incurred damages.

129.    Defendants are liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Defendants' unfair and deceptive practices, and any other just and proper relief under MO. REV. STAT. § 407.025.

### COUNT V
### VIOLATION OF TENNESSEE CONSUMER PROTECTON ACT
### (TENN. CODE ANN § 47-18-101, et seq.)
### (brought on behalf of the Tennessee Class)

130.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

131.    This claim is brought on behalf of Tennessee residents.

132.    Plaintiffs are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(19).

133.    Defendants are a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

134.    Defendants' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

135.    The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have . . . characteristics, [or] . . . benefits . . . that they do not have . . .;" Representing those goods or services are of a particular standard, quality or grade . . . if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." TENN. CODE ANN. § 47-18-104.

136.    By concealing the risks and harms associated with the use and handling of the Products (which due to the Rodent Infestation and other unsanitary conditions contain or have a risk of containing Salmonella or other infectious diseases), Defendants engaged in deceptive

business practices, including representing that Products have characteristics, uses, benefits, and qualities which they do not have; representing that Products are of a particular standard, quality, and grade when they are not; and engaging in other unconscionable false, misleading, or deceptive practices.

## COUNT VI
## NEGLIGENCE
### (brought on behalf of the Classes)

137.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

138.    Defendants owed a duty to Plaintiffs and the Classes to exercise reasonable care in the sale, quality control and marketing of the Products.

139.    Defendants breached its duty to Plaintiffs and the Classes by marketing, selling, advertising and warranting defective Products (which contain or have a risk of containing Salmonella or other infectious diseases) to Plaintiffs and the Classes, and by failing to take those steps necessary to discontinue selling the Products to consumers.

140.    Defendants were aware, or reasonably should have been aware, that the Products were harmful and did not perform their intended use.

141.    When they purchased the Products, Plaintiffs and the Classes were unaware of their unsafe and dangerous nature.

142.    As a direct and proximate cause of the foregoing, Plaintiffs and the Classes have suffered and will continue to suffer damages and economic loss described fully above.

143.    Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
### (brought on behalf of the Classes)

144.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

145.    Defendants are a merchant engaging in the sale of goods to Plaintiffs and the Class members.

146.    There was a sale of goods from Defendants to Plaintiffs and the Class members.

147.    As set forth herein, Defendants marketed and sold the Products, and prior to the time the Products were purchased by Plaintiffs and the Classes, Defendants impliedly warranted to them that they were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Products' packages and labels that they did not.

148.    Plaintiffs and the Classes relied on Defendants' promises and affirmations of fact.

149.    Contrary to these representations and warranties, the Products were not fit for their ordinary use and did not conform to Defendants' representations.

150.    Defendants breached the implied warranties by selling Products that risk serious harm and Defendants were or should have been on notice of this breach.

151.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Classes have suffered actual damages in that they have purchased the Products that are worth less than the price they paid and that they would not have purchased at all had they known the harms and risks that the Products contained.

## COUNT VIII
## UNJUST ENRICHMENT
### (brought on behalf of the Classes)

152.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

153.    Substantial benefits have been conferred on Defendants by Plaintiffs and the Classes through the purchase of the Products. Defendants knowingly and willingly accepted and enjoyed these benefits.

154.    Defendants either knew or should have known that the payments rendered by Plaintiffs and the Classes were given and received with the expectation that the Products would have the qualities, characteristics, ingredients, and suitability for use represented and warranted by Defendants. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

155.    Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the Classes.

156.    Plaintiffs and the Classes are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

**COUNT IX**
**FRAUDULENT CONCEALMENT AND FAILURE TO DISCLOSE**
**(brought on behalf of the Classes)**

157.    Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

158.    During the Class period, Defendants knowingly, fraudulently, and actively misrepresented, omitted and concealed from consumers material facts relating to the quality of its Products.

159.    Defendants have a duty to disclose to Plaintiffs and the Classes the actual quality of its Products which contain or have a risk of containing Salmonella or other infectious diseases.

160.    The misrepresentations, omissions and concealments complained of herein were material and were made on a uniform and market-wide basis.  As a direct and proximate result of these misrepresentations, omissions and concealments, Plaintiffs and the Classes have been damaged, as alleged herein.

161.     Plaintiffs and the Classes reasonably and actually relied upon Defendants' representations, omissions and concealments.  Such reliance may also be imputed, based upon the materiality of Defendants' wrongful conduct.

162.     Based on such reliance, Plaintiffs and the Classes purchased Products and, as a result, suffered and will continue to suffer damages and economic loss in an amount to be proven at trial.

163.     Had Plaintiffs and the Classes been aware of the true nature of Defendants' business practices, they would not have purchased the Products.

164.     Defendants' acts and misconduct, as alleged herein, constitute oppression, fraud and/or malice entitling Plaintiffs and the Classes to an award of punitive damages to the extent allowed in an amount appropriate to punish or to set an example of Defendants.

**COUNT X**
**DECLARATORY AND INJUNCTIVE RELIEF**
**(brought on behalf of the Classes)**

165.     Plaintiffs re-allege and incorporate by reference each of the paragraphs above.

166.     Plaintiffs and the Classes are entitled to declaratory relief establishing that Defendants engaged in unfair and deceptive practices.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for a judgment to be entered upon Defendants as follows:

A.     Appointing Plaintiffs as representatives of the Classes and the undersigned counsel as Class counsel;

B.     For economic and compensatory damages on behalf of Plaintiffs and all Class Members;

C.      For actual damages sustained;

D.      For treble damages pursuant to law, and all other actual, general, special, incidental,

statutory, punitive, and consequential damages to which Plaintiffs and Class Members are entitled;

E.      For injunctive relief, compelling Defendants to cease its unlawful actions and to

account to Plaintiffs for their unjust enrichment;

F.      For reasonable attorneys' fees, reimbursement of all costs for the prosecution of

this action, and pre-judgment and post-judgment interest; and

G.      For such other and further relief this Court deems just and appropriate.

## VIII.     DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated: March 7, 2022

> Respectfully submitted,
>
> */s/ Steven A. Martino*
> STEVEN A. MARTINO (MAR057)
> */s/ Tiffany N. Ray*
> TIFFANY N. RAY (RAY037)
> */s/ Joseph S. Dennis*
> JOSEPH S. DENNIS (DEN 034)
> *Attorneys for Plaintiffs*
>
> TAYLOR MARTINO, P.C.
> PO Box 894
> Mobile, AL 36601-0894
> Email:
> stevemartino@taylormartino.com
> tiffany@taylormartino.com
> joseph@taylormartino.com
> Telephone: (251) 433-3131
> Fax: (251) 433-4207

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 7th day of March, 2022, I filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.


*/s/ Steven A. Martino*